IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MOHAMMAD GHOURI, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-00503 (RDA/JFA) |
| | ) |
| AMSHER COLLECTION SERVICES INC., *et al.*, | ) |
| | ) |
|    Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before this Court on Defendant T-Mobile USA Inc.'s ("T-Mobile") Motion to Stay and Compel Arbitration, or in the Alternative, to Stay Litigation ("Motion"). Dkt. 4. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering T-Mobile's Memorandum in Support of its Motion (Dkt. 4), Defendant AmSher Collection Services, Inc.'s ("AmSher") Joinder in the Motion (Dkt. 7); *pro se* Plaintiff Mohammad Ghouri's ("Plaintiff") Opposition (Dkt. 19), and T-Mobile's Reply (Dkt. 20), this Court GRANTS the Motion for the reasons that follow and DISMISSES the case without prejudice.

### I.  BACKGROUND

#### A.  Factual Background

This matter arises from the Complaint Plaintiff originally filed on March 23, 2022, which Plaintiff later amended on August 29, 2022, alleging Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). *See* Dkt. Nos. 2; 16.

Beginning in June 2017, Plaintiff subscribed to T-Mobile's telephone services and enrolled in autopay. Dkt. 16 ¶ 13. On April 14, 2020, Plaintiff entered into a new service agreement with T-Mobile ("2020 Services Agreement" or "Contract"). On June 5, 2021, Plaintiff allegedly paid T-Mobile the outstanding balance on the account at T-Mobile's store in Stafford, Virginia. *Id.* ¶ 14. On June 10, 2021, Plaintiff switched providers and enrolled in a new mobile service plan with AT&T believing that his relationship with T-Mobile had terminated. *Id.* ¶ 15. But T-Mobile allegedly continued to charge differing amounts to Plaintiff's closed account for several additional months. *Id.* ¶¶ 16-18. During this period, Plaintiff allegedly made several efforts to address the charges with T-Mobile representatives. On each occasion, the representative allegedly assured Plaintiff the charges would be "fix[ed] [] on our end." *Id.* ¶ 20.

On November 24, 2021 and again on November 28, 2021, Plaintiff allegedly received notice from T-Mobile alerting him that his account would be deactivated for failure to pay an outstanding balance of $930.00. *Id.* ¶ 21. Yet a company representative again assured Plaintiff the issue would be "elevate[d]" and "fix[ed]." *Id.* When T-Mobile allegedly requested bank statements evidencing that Plaintiff had made all payments for June and July, Plaintiff provided the documentation. *Id.* ¶ 22. Weeks later, on December 29, 2021, Defendant AmSher sent Plaintiff a collection notice for $1,163.65. *Id.* ¶ 23. On March 4, 2022, Plaintiff received notice that his credit score had decreased from 720 to 671. *Id.* ¶ 24. In two subsequent calls with additional T-Mobile representatives on March 5, 2022 and March 22, 2022, both representatives acknowledged that the outstanding balance on Plaintiff's account was a mistake. *Id.* ¶¶ 25-26. Plaintiff attached a credit report notice to the Amended Complaint, dated March 24, 2022, showing a 49 point increase in credit score to 745 following the removal of an account in collection by AmSher. *See id.* ¶ 30; Dkt. 16-5 at 2-3.

Plaintiff now alleges that Defendants violated the FCRA by "negligently reporting derogatory information to the credit bureaus after [he] persistently provided documentation proving the information was false and inaccurate." Dkt. 16 ¶ 34. As a result of these actions and the "emotional distress" Plaintiff alleges he suffered, *id.* ¶ 29, Defendant seeks actual, punitive, and statutory damages as well as an injunction to prohibit Defendants from repeating the alleged conduct with respect to Plaintiff's credit file.

B.  Procedural Background

On March 23, 2022, Plaintiff filed the original complaint in Stafford County Circuit Court. Dkt. 2. On May 7, 2022, AmSher filed a notice of removal to this Court, joined by T-Mobile. Dkt. 1. On July 6, 2022, T-Mobile filed a Motion to Compel Arbitration and Stay the case, which AmSher joined on July 11, 2022. Dkt. Nos. 4; 7. Plaintiff sought leave to file an amended complaint on August 4, 2022 and an extension of time to file an opposition to the instant motion, which the Court granted on August 29, 2022. Dkt. Nos. 8; 16. T-Mobile filed its Answer and Plaintiff timely filed an opposition to the Motion to Compel Arbitration on September 9, 2022. Dkt. Nos. 17; 19. T-Mobile filed its reply to Plaintiff's opposition on September 15, 2022. Dkt. 20. AmSher filed its Answer on September 16, 2022. Dkt. 21. Plaintiff filed a supplemental reply brief on September 26, 2022 and moved for default judgment against Defendants that same day. Dkt. Nos. 22-23.

II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(3) allows for a party to move for dismissal for improper venue. Fed. R. Civ. P. 12(b)(3).[1] Where a party moves for dismissal pursuant to a forum

---

[1] This Court construes T-Mobile's Motion to Compel as a Rule 12(b)(3) motion. That said, other courts have construed motions to compel arbitration as motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See Lipcon v. Underwriters at Lloyd's, London*,

3

selection clause, such motions are "cognizable as motions to dismiss for improper venue." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). An arbitration clause is a "specialized kind of forum-selection clause." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). Therefore, Federal Rule of Civil Procedure 12(b)(3) is the proper vehicle by which a party may move to dismiss an action due to an arbitration clause.

Further, "because a motion under 12(b)(3) is a disfavored 12(b) motion," the Fourth Circuit has held that "a defendant will have to raise the forum selection issue in [its] first responsive pleading, or waive the clause." *Sucampo Pharm., Inc.*, 471 F.3d at 549. And in considering a 12(b)(3) motion, "the court is permitted to consider evidence outside of the pleadings." *Aggarao*, 675 F.3d at 365-66. To defeat such a motion, the non-movant must make a "*prima facie* venue showing," and the facts must be viewed "in the light most favorable to the plaintiff." *Id.* at 366 (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).

### III.  ANALYSIS

T-Mobile filed the instant motion (which AmSher joined) as the first responsive pleading to Plaintiff's Complaint. In doing so, Defendants argue that the 2020 Service Agreement, which Plaintiff admits he signed, compels arbitration for any disputes related to billing in connection with T-Mobile or third-parties like AmSher implicated by the billing dispute. They also contest that Plaintiff has submitted his claims to arbitration prior to filing the Complaint. Plaintiff maintains

---

148 F.3d 1285, 1290 (11th Cir. 1998) (favoring Rule 12(b)(3) as the proper vehicle for compelling arbitration and staying or dismissing a case because of the Supreme Court's holding in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) that a district court retains discretion to transfer a civil action "to any other district or division where it might have been brought" and that this transferring power derivative of 28 U.S.C. § 1404(a) reflects the venue preferences negotiated by private parties); *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548-49 (D. Md. 2019) (discussing various approaches to construing motions to compel).

that the 2020 Service Agreement's arbitration clause does not control the dispute because that clause only operates for the duration of the existence of the contract, which Plaintiff argues ended in June of 2021.  Plaintiff adds that Defendants have waived their right to arbitrate following their engagement in these proceedings.

> A. Whether the Binding Arbitration Clause Applies and Therefore Warrants Compelling Arbitration
>
> > 1. The Federal Arbitration Act as the Guiding Legal Framework for Reviewing Arbitration Clauses

The "preeminent concern of Congress in passing" the Federal Arbitration Act ("FAA") "was to enforce private agreements into which parties had entered[.]" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).  The FAA requires that written arbitration agreements arising out of commercial contracting "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA "represents 'a liberal policy favoring arbitration agreements.'" *Murray*, 289 F.3d at 301 (citing *Moses H. Cone Mem'l Hop. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Under such a policy, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Murray*, 289 F.3d at 301.

To assess the validity of a governing arbitration provision subject to the FAA in a commercial dispute, the Fourth Circuit applies the test enunciated in *Adkins v. Labor Ready, Inc.*:

> [i]n the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmovant] to arbitrate the dispute."

303 F.3d 496, 501 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

If the court is satisfied that an arbitration provision was agreed to in writing, it must "make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."  9 U.S.C. § 4; *see also Connell v. Apex Sys., LLC*, No. 3:19-cv-299, 2020 WL 354742, at *3 (E.D. Va. 2020) ("When a valid arbitration agreement exists and the issues in the case fall within the scope of that agreement, '[a] district court . . . has no choice but to grant a motion to compel arbitration.'" (quoting *Adkins*, 303 F.3d at 500)).

2. Applying the *Adkins* factors

i. *The existence of a dispute between the parties*

This Court finds that in this case the first element has been satisfied because there is clearly a dispute between Plaintiff and Defendants, as evidenced by Plaintiff's Amended Complaint.

ii. *A written agreement that includes an arbitration provision which purports to cover the dispute*

The second *Adkins* element is also satisfied as this Court finds that neither party contests that the 2020 Services Agreement is the subject of Plaintiff's allegations and that such agreement contains an arbitration provision.  "Although the FAA manifests a liberal federal policy favoring arbitration agreements and 'questions of arbitrability must be addressed with a healthy regard' for this policy, *Moses*, 460 U.S. at 24, the [FAA] leaves interpretation of an agreement to the application of common law principles of contract law." *Whiteside*, 940 F.2d 99 at 101.

A federal court must apply the substantive law as directed by the forum's choice-of-law rules.  This is a fundamental principle. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Significantly, "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual

circumstances."[2] *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, No. 3:12-cv-00146, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012) (citing *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007)). Here, the Contract contains a choice-of-law provision, confirming that it is governed by the FAA and "the laws of the state or jurisdiction in which [Plaintiff's] billing address in [T-Mobile's] records is located." Dkt. 4-3 at 11. As such, there is no dispute that Virginia contract interpretation law applies because Plaintiff, a citizen of Virginia, does not contest that his billing address is in a different state than his domicile.

Under Virginia law, contract interpretation is a question of law governed by the ordinary rules of contract interpretation. *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998). Specific to arbitration clauses, the party "seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that purports to cover the dispute." *Lovelady v. Five Star Quality Care-VA, LLC*, No. 4:18-cv-18, 2018 WL 3580768, at *7 (E.D. Va. July 25, 2018). But once the moving party satisfies this burden, the non-moving party must "come forward with sufficient facts to place the entitlement to arbitration in dispute." *Id*.

Courts applying Virginia contract interpretation principles construe the contract according to its plain meaning if its terms are "clear and unambiguous." *See, e.g.*, *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 250 Va. 402, 407 (1995). A term or clause is considered ambiguous "when it may be understood in more than one way or when it refers to two or more

---

[2] The unusual circumstances to which the court in *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, referred, include situations in which "the contract at issue . . . is 'unfair or unreasonable, or [ ] affected by fraud or unequal bargaining power,' *Paul Bus. Sys., Inc. v. Cannon U.S.A., Inc.*, 240 Va. 337, 342 (1990), or (b) there is some indication that the parties did not clearly intend for the designated law to govern the terms of the contract." No. 3:12-cv-00146, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012) (citing *Senture, LLC. v. Dietrich*, 575 F. Supp. 2d 724, 727 (E.D. Va. 2008) (citation omitted)). Such circumstances do not appear to be present in this case.

things at the same time." *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 234 (1992). "Thus, Virginia law construes the contract strictly to effectuate the intentions of the parties, giving terms their plain meaning, and declining to read in an ambiguity or meaning the parties did not intend." *Dragas Mgmt. Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 766, 773 (E.D. Va. 2011) (collecting cases).

The plain text of the 2020 Services Agreement provides:

> **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third-party vendors) whenever you also assert claims against us in the same proceeding.

Dkt. 4-3 at 3. There is no ambiguity with respect to the application of this clause to the current dispute—which entirely involves Plaintiff's concerns over how T-Mobile allegedly improperly reported an overdue payment to AmSher, a third-party collection agency, in connection with the payment of bills issued to Plaintiff by T-Mobile. This arbitration clause operates as an umbrella over all claims emanating from Plaintiff's billing dispute with T-Mobile and therefore picks up Plaintiff's claim against AmSher.

Moreover, it is hornbook law that a written arbitration provision agreed to by the parties at the time of contracting extends beyond the termination of the agreement for those disputes which the provision purports to cover. *See Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 254 (1977) (finding in the context of a collective-bargaining agreement that the mandatory arbitration provision survives the termination of the agreement because "the alternative remedy of a lawsuit is the very remedy the arbitration clause was designed to avoid"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus'l &*

8

*Serv.*, 568 F.3d 158, 165 (4th Cir. 2009) ("[W]ere we to hold that . . . the commitment to arbitrate terminated on the very day the [] agreement expired, we would be embracing the untenable proposition that arbitration obligations could seldom outlive the [] agreements in which they were embodied. But any such notion is at odds with the parties' freedom to contract for dispute resolution mechanisms of a duration the parties themselves would prefer."); *Waterfront Marine Const., Inc. v. N. End 49ers Sandbridge Bulkhead Groups A, B & C*, 251 Va. 417, 426 (1996) ("We have also held that an arbitration clause which encompasses all controversies 'arising out of' or 'related to' the contract is very broad in its coverage." (citing *McMullin v. Union Land & Mgmt. Co.*, 242 Va. 337, 341 (1991))).

For the reasons described above, this Court finds that the mandatory arbitration provision covers this contract dispute.

> iii. *The relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce*

The third *Adkins* element is also readily satisfied. 303 F.3d at 501. Courts "in deciding to apply the FAA [ ] need not identify any specific effect upon interstate commerce, so long as 'in the aggregate the economic activity in question would represent 'a general practice subject to federal control.'" *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697-98 (4th Cir. 2012). The Supreme Court has opined that the FAA's requirement that the contract "involv[e] commerce" should be broadly construed to "mean a full exercise of constitutional power . . . . signal[ing] [Congress'] intent to exercise [] [its] commerce power to the full." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Moreover, the Fourth Circuit does not require parties to affirmatively demonstrate that this element has been met. *Rota-McLarty*, 700 F.3d at 697 ("[T]he FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction."). Here, the Contract represents

9

an agreement by two parties residing in two separate states involving a service extending across multiple jurisdictions. The nature of the parties' agreement necessitates interstate commerce, and neither of the parties allege otherwise.

### iv. *The failure, neglect, or refusal of Plaintiff to arbitrate the dispute*

This Court also finds that the fourth *Adkins* element is met. 303 F.3d at 501. According to Plaintiff, the billing dispute has since been resolved. *See* Dkt. 16 ¶¶ 29-30; Dkt. 16-5 at 2-3. When Defendants received service of the original complaint in state court in connection with the fallout from the 2020 Services Agreement, they explicitly invoked the validity of the arbitration provision of the Contract as affirmative defenses in their respective answers. *See* Dkt. 4-4. The uncontroverted record provides no evidence that Plaintiff sought to engage an arbitrator or pursue formal arbitration; instead, Plaintiff sought to litigate his grievance in court. While Plaintiff attempts to argue that Defendants have waived their right to demand arbitration, the Supreme Court recently advised that a court determines whether the party seeking arbitration waived its right by asking if that party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 596 U.S. ----, 142 S. Ct. 1708, 1714 (2022). In this case, the "filing of minimal responsive pleadings, such as an answer or compulsory counter-claim, are not necessarily inconsistent with an intent to pursue arbitration." *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 206 (4th Cir. 2004). In addition to Defendants having invoked the validity of the arbitration provision in its answers to the original complaint, Plaintiff proffers no evidence that Defendants took any pre-trial action that would suggest they waived reliance on the arbitration provision.

Plaintiff has refused to arbitrate and each of the four *Adkins* factors has been met.

B. Proper Disposition of the Matter

Following this Court's determination that each of the *Adkins* factors have been met, this Court must determine whether to stay the matter or dismiss it altogether.

Section 3 of the FAA permits a party to seek a stay of "any suit or proceeding . . . brought in any of the courts of the United States" if the court determines an arbitration provision controls the dispute. Defendant advocates for dismissal and Plaintiff fails to entertain this issue. Thus, this Court is tasked with determining which remedy is most appropriate under the circumstances.

Section 3 of the FAA expressly provides:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, the Fourth Circuit considered whether § 3 prohibits courts from dismissing actions where a written agreement between parties requires arbitration. 252 F.3d 707, 709-10 (4th Cir. 2001). The Fourth Circuit has held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see, e.g.*, *Galloway v. Priority Imports Richmond, LLC*, 426 F. Supp. 3d 236, 245 (E.D. Va. 2019) (compelling arbitration and dismissing the case without prejudice).

In reaching this determination, the Fourth Circuit cited to the Fifth Circuit's decision in *Alford*, 975 F.2d at 1164. In *Alford*, the Fifth Circuit interpreted § 3 to mean that a district court "may not deny a stay" "upon a showing that the opposing party has commenced suit 'upon any

11

issue referable to arbitration under an agreement in writing for such arbitration . . . ." *Id*. The court opined that "[t]his rule, however, was not intended to limit dismissal of a case in proper circumstances." *Id*. "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Id*. (citing *Sea–Land Serv., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Hoffman v. Fidelity and Deposit Co. of Md.*, 734 F. Supp. 192, 195 (D.N.J. 1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991)).

In this case, "any and all claims or disputes in any way related to or concerning the agreement" must be arbitrated in the Commonwealth of Virginia pursuant to the 2020 Services Agreement. Dkt. 4-3 at 3. Each issue raised in the Amended Complaint is arbitrable based on the provisions of the Contract.[3] Accordingly, this Court finds that dismissal of the Complaint without prejudice is the proper remedy.

## IV. CONCLUSION

For the reasons articulated in this opinion, it is hereby ORDERED that Defendant's Motion to Compel Arbitration (Dkt. 4) is GRANTED and the parties are directed to proceed with arbitrating this dispute in an appropriate arbitration forum in accordance with the requirements of the 2020 Service Agreement; and it is

FURTHER ORDERED that Plaintiff's Amended Complaint (Dkt. 16) is DISMISSED without prejudice.

---

[3] Let's be clear. The determination of this Court to dismiss the matter based upon the application of the arbitration provision should not be read in any way to endorse the action of T-Mobile in this matter. If proven to be true, the effect on Plaintiff's credit rating and the stress caused by T-Mobile's inaction (and action) during Plaintiff's plight, at minimum borders between casual indifference and callous mistreatment.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to enter judgment for Defendants pursuant to Federal Rule of Civil Procedure 58 and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
October 19, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge